EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

AAROW ELECTRICAL     *
SOLUTIONS, LLC,

                   *     Case No.  8:22-cv-02363-GJH

     Plaintiff,              

                   *

v.                             *

TRICORE SYSTEMS, LLC, *ET AL.*,    *

     Defendants.            

                   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT, ANTHONY REYES'S, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:       Plaintiff, Aarow Electrical Solutions, LLC

FROM:    Defendant, Anthony Reyes

Defendant, Anthony Reyes, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

### I.
### INSTRUCTIONS

A.     A written response to this Document Production Request is due on October 25, 2022 by the agreement of the parties' counsel.

B.     The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.     If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.     The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.     The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.     If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.     If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all

recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

> **Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.    Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.      Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social

4

media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.      The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.      The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.      The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation, paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble

5

memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.     The term "trade secrets" means any information or thing that constitutes a trade secret under Maryland law, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

J.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.     The term "any" means one or more

L.     The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.     The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A. The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B. The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C. The term "Mr. Reyes" refers to Defendant Anthony Reyes, and his representatives, accountants, attorney, and agents.

D. The term "Mr. Hummer" refers to Dave Hummer, and his representatives, accountants, attorney, and agents.

E. The term "Individual Defendants" refers, individually or collectively as the case may be, to the Defendants, Mr. Reyes, Candace Santos, Jonathon Steele, John Taylor, Chad Tippet, and Nathan Velozo, and their representatives, accountants, attorneys, and agents.

F. The term "Defendants" refers to the Individual Defendants and Tricore.

G. The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

H.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

I.     The term "Complaint" refers to the Complaint in this action filed by Aarow against Defendants, Docket Entry No. 1.

J.     The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

**IV.**
**REQUESTED FORM OF PRODUCTION**

Documents should be produced in the following form:

A.     Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.     Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load

documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

     C.     Metadata fields should include:

        1.     StartBates (Document ID for pointing to Images and Native files).

        2.     EndBates.

        3.     StartAttach.

        4.     EndAttach.

        5.     PageCount.

        6.     Creation Date.

        7.     Sent Date.

        8.     Received Date.

        9.     Modified Date.

10.     Date Last Saved.

11.     To.

12.     From.

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

10

E.      All documents should be Bates labeled as follows:

1.      Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.      TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:      The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

**Request No. 1.**    All documents relating to the authorization, use, and/or return by or of Mr. Hummer of any Aarow laptop or other electronic device post termination of his employment with Aarow, including, but not limited to any agreements that Aarow entered into with respect to the use of such electronic devices.

**RESPONSE:**

Request No. 2.    All documents relating to the authorization, use, and/or return by or of Mr. Reyes of any Aarow laptop or other electronic device post termination of his employment with Aarow.

**RESPONSE:**

Request No. 3.    All documents relating to your claim that the Individual Defendants and/or Tricore engaged in unfair competition.

**RESPONSE:**

Request No. 4.    All documents relating to your claim of unfair competition against Defendants.

**RESPONSE:**

Request No. 5.    All documents relating to contracts or other business that Aarow contends it did not receive as a result of any wrongdoing by the Defendants.

**RESPONSE:**

Request No. 6.    All documents relating to any contracts Aarow contends were terminated or cancelled or amended as a result of any wrongdoing by the Defendants.

**RESPONSE:**

Request No. 7.    All documents relating to any noncompetition, nondisclosure or non-solicitation agreements to which the Individual Defendants are or were subject with respect to their employment with Aarow.

**RESPONSE:**

Request No. 8.    All documents relating to the means by which Aarow took to keep its pricing confidential, including, but not limited to non-disclosure agreements.

**RESPONSE:**

Request No. 9.    All documents relating to any correspondence with any of your clients or customers relating to the negotiation of a price as to a specific bid, including, but not limited to requests of clients or customers to match a certain price.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

13

## **Certificate of Service**

I HEREBY CERTIFY that on this 5th day of October, 2022, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

_/s/ Gregory L. Arbogast_____
Gregory L. Arbogast

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

AAROW ELECTRICAL       \*
SOLUTIONS, LLC,

                            \*      Case No.  8:22-cv-02363-GJH

      Plaintiff,

                            \*

v.                                   \*

                            \*

TRICORE SYSTEMS, LLC, *ET AL.*,

                            \*

      Defendants.

                            \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**DEFENDANT, CANDACE SANTOS', FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS TO
<u>PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC</u>**

      TO:         Plaintiff, Aarow Electrical Solutions, LLC

      FROM:     Defendant, Candace Santos

      Defendant, Candace Santos, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

**I.
INSTRUCTIONS**

      A.     A written response to this Document Production Request is due on October 25, 2022 by the agreement of the parties' counsel.

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.     Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.     Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

  F. The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

  G. The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

  H. The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "trade secrets" means any information or thing that constitutes a trade secret under Maryland law, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, summarizing, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

A.      The term "Mr. Reyes" refers to Defendant Anthony Reyes, and his representatives, accountants, attorney, and agents.

B.      The term "Mr. Hummer" refers to Dave Hummer, and his representatives, accountants, attorney, and agents.

C.      The term "Individual Defendants" refers, individually or collectively as the case may be, to the Defendants, Mr. Reyes, Candace Santos, Jonathon Steele, John Taylor, Chad Tippet, and Nathan Velozo, and their representatives, accountants, attorneys, and agents.

D.      The term "Defendants" refers to the Individual Defendants and Tricore.

E.      The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

F.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

G.     The term "Complaint" refers to the Complaint in this action filed by Aarow against Defendants, Docket Entry No. 1.

H.     The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.     Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.     Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load

8

documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

  C.  Metadata fields should include:

    1.  StartBates (Document ID for pointing to Images and Native files).

    2.  EndBates.

    3.  StartAttach.

    4.  EndAttach.

    5.  PageCount.

    6.  Creation Date.

    7.  Sent Date.

    8.  Received Date.

    9.  Modified Date.

10.    Date Last Saved.

11.    To.

12.    From.

13.    CC.

14.    BCC.

15.    Subject.

16.    Native filename.

17.    Native File Path.

18.    File type.

19.    Family relationship of documents, i.e. parent/child identification.

20.    Custodian.

21.    Author.

22.    Last saved by.

23.    MD5hash.

24.    As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.    Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

10

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.  The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

**Request No. 1.**            Any  and  all  Subject  Information  that  Aarow contends the Individual Defendants took or otherwise misappropriated or misused.

**RESPONSE:**

**Request No. 2.**            Any  and  all  documents  relating  to  or  supporting Aarow's  claim  that  the  Individual  Defendants  deleted  or  otherwise  destroyed documents and evidence.

**RESPONSE:**

Request No. 3.            Any and all records relating to Aarow's financials, project receipts (on a project-by-project, client-by-client basis, and customer-by-customer basis), and the projected value of Aarow's contracts, relationships, reputation, and goodwill with its clients and customers and with its potential clients and customers that are alleged to have been damaged by Defendants' conduct for the time period beginning three years prior to August 23, 2022 until the present, including, but not limited to profit and loss statements, balance sheets, cash receipts, operating expense reports, projections and analyses.

**RESPONSE:**

Request No. 4.            Any and all documents relating to any communication and correspondence between you and HITT on and after May 26, 2022.

**RESPONSE:**

Request No. 5.            Any and all documents relating to any communication and correspondence between you and Kaiser Permanente on and after May 26, 2022.

**RESPONSE:**

Request No. 6.            Any and all documents relating to any monetary investment, employee or owner time, and/or training that Aarow made or otherwise put into developing and rendering the pricing in its quotes to customers or other contractors.

**RESPONSE:**

Request No. 7.          Any and all communications relating to or supporting the factual allegations or claims at issue in this lawsuit between Aarow and the Individual Defendants and/or the Individual Defendants' manager(s), and/or supervisor(s), and/or Aarow's human resources representative(s).

**RESPONSE:**

Request No. 8.          Any and all documents relating to any internal communication and correspondence regarding the Individual Defendants or with the Individual Defendants since March 2022.

**RESPONSE:**

Request No. 9.          Any and all documents relating to the termination of Mr. Hummer's employment.

**RESPONSE:**

Request No. 10.     Mr. Hummer's personnel file, in any form, maintained by Aarow, including files concerning Mr. Hummer maintained by Mr. Hummer's supervisor(s), manager(s), or Mr. Hummer's human resources representative(s).

**RESPONSE:**

Respectfully submitted,

13

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 5th day of October, 20202, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, CHAD TIPPETT'S, FIRST REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO**
**PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:    Defendant, Chad Tippett

Defendant, Chad Tippett, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

**I.**
**INSTRUCTIONS**

A.    A written response to this Document Production Request is due on October 25, 2022 by the agreement of the parties' counsel.

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

1

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all

2

recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

> **Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.    Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.     Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social

4

media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.     The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.     The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.     The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation, paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble

memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "trade secrets" means any information or thing that constitutes a trade secret under Maryland law, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

## III.
## SPECIFIC DEFINITIONS

A.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.    The term "Mr. Reyes" refers to Defendant Anthony Reyes, and his representatives, accountants, attorney, and agents.

D.    The term "Mr. Hummer" refers to Dave Hummer, and his representatives, accountants, attorney, and agents.

E.    The term "Individual Defendants" refers, individually or collectively as the case may be, to the Defendants, Mr. Reyes, Candace Santos, Jonathon Steele, John Taylor, Chad Tippet, and Nathan Velozo, and their representatives, accountants, attorneys, and agents.

F.    The term "Defendants" refers to the Individual Defendants and Tricore.

G.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

H.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

I.      The term "Complaint" refers to the Complaint in this action filed by Aarow against Defendants, Docket Entry No. 1.

J.      The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

**IV.**
**REQUESTED FORM OF PRODUCTION**

Documents should be produced in the following form:

A.      Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.      Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load

8

documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

    C.    Metadata fields should include:

        1.    StartBates (Document ID for pointing to Images and Native files).

        2.    EndBates.

        3.    StartAttach.

        4.    EndAttach.

        5.    PageCount.

        6.    Creation Date.

        7.    Sent Date.

        8.    Received Date.

        9.    Modified Date.

10.    Date Last Saved.

11.    To.

12.    From.

13.    CC.

14.    BCC.

15.    Subject.

16.    Native filename.

17.    Native File Path.

18.    File type.

19.    Family relationship of documents, i.e. parent/child identification.

20.    Custodian.

21.    Author.

22.    Last saved by.

23.    MD5hash.

24.    As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.    Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

10

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

**V.**
**DOCUMENTS REQUESTED**

Request No. 1.    Any and all documents relating to contracts for electrical work that Aarow has entered into on and after May 26, 2022 with HITT, Kaiser Permanente, or any other contractors or clients on whom the Individual Defendants worked.

**RESPONSE:**

Request No. 2.    Any and all document(s) relating to or supporting any of Aarow's claims in the Complaint that have not otherwise been produced in response

to any of the other Requests for Production of Documents that have been propounded by any of the Defendants.

**RESPONSE:**

Request No. 3.    Any and all correspondence, notes, memos, reports, and documentation relating to any meeting, conversation, solicitation, or communication between any of the Individual Defendants and any clients or customers for which Aarow performs work after termination of the respective Individual Defendants' employment.

**RESPONSE:**

Request No. 4.    Any and all documents relating to any Employment Agreement signed or otherwise agreed to by any of the Individual Defendants with Aarow, including drafts of any such agreement.

**RESPONSE:**

Request No. 5.    Any and all non-disclosure or other confidentiality agreement that you have entered into with any person or entity in the past four years.

**RESPONSE:**

Request No. 6.    Any and all documents relating to any restrictions that you have employed in the last three years to access any of Aarow's confidential information or trade secrets.

**RESPONSE:**

Request No. 7.    Any and all documents relating to any of Aarow's trade secrets to which you contend the Individual Defendants had access after termination of their respective employments with Aarow.

**RESPONSE:**

Request No. 8.    Any and all documents relating to communications between or among any of the Defendants, including, but not limited to communication by an Individual Defendant to himself or herself, such as an email from one account to another account owned or controlled by that person.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## **Certificate of Service**

I HEREBY CERTIFY that on this 5th day of October, 2022, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.


*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**DEFENDANT, JOHN TAYLOR'S, FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO
<u>PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC</u>**

TO:         Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, John Taylor

Defendant, John Taylor, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

**I.
INSTRUCTIONS**

A.     A written response to this Document Production Request is due on October 25, 2022 by the agreement of the parties' counsel.

B.     The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

1

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all

recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.     Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document. Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.     If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

> **Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.     Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.     Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social

4

media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation, paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble

5

memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.     The term "trade secrets" means any information or thing that constitutes a trade secret under Maryland law, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

J.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.     The term "any" means one or more

L.     The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.     The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.    The term "Mr. Reyes" refers to Defendant Anthony Reyes, and his representatives, accountants, attorney, and agents.

D.    The term "Mr. Hummer" refers to Dave Hummer, and his representatives, accountants, attorney, and agents.

E.    The term "Mr. Steele" refers to Defendant, Jonathan Steele, and his representatives, accountants, attorney, and agents.

F.    The term "Individual Defendants" refers, individually or collectively as the case may be, to the Defendants, Mr. Reyes, Candace Santos, Mr. Steele, John Taylor, Chad Tippet, and Nathan Velozo, and their representatives, accountants, attorneys, and agents.

G.    The term "Defendants" refers to the Individual Defendants and Tricore.

H.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

7

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

I.      The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

J.      The term "Power Services" refers to Power Services, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

K.      The term "Power Concepts" refers to the entity generally known as Power Concepts, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors,

officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

L.    The term "Complaint" refers to the Complaint in this action filed by Aarow against Defendants, Docket Entry No. 1.

M.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

**IV.**
**REQUESTED FORM OF PRODUCTION**

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of

its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

    C.    Metadata fields should include:

        1.    StartBates (Document ID for pointing to Images and Native files).

        2.    EndBates.

        3.    StartAttach.

        4.    EndAttach.

        5.    PageCount.

        6.    Creation Date.

        7.    Sent Date.

        8.    Received Date.

        9.    Modified Date.

        10.    Date Last Saved.

        11.    To.

        12.    From.

        13.    CC.

        14.    BCC.

15.    Subject.

16.    Native filename.

17.    Native File Path.

18.    File type.

19.    Family relationship of documents, i.e. parent/child identification.

20.    Custodian.

21.    Author.

22.    Last saved by.

23.    MD5hash.

24.    As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.    Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

11

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

> **NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

# V.
## DOCUMENTS REQUESTED

Request No. 1.    Any  and  all  documents  containing  the  name  Power Services or that otherwise were created or used by Power Services.

**RESPONSE:**

Request No. 2.    Any  and  all  documents  containing  the  name  Power Concepts or that otherwise were created or used by Power Concepts.

**RESPONSE:**

Request No. 3.    Any and all documents evidencing, comprising, or otherwise referring to documents that Aarow contends any of the Individual Defendants deleted.

**RESPONSE:**

Request No. 4.    Any and all correspondence between Aarow and Mr. Steele and/or Mr. Reyes regarding, evidencing, relating, or pertaining to the hiring of Mr. Steele and/or Mr. Reyes.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

13

## **Certificate of Service**

I HEREBY CERTIFY that on this 5th day of October, 2022, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

AAROW ELECTRICAL                    *
SOLUTIONS, LLC,

                            *     Case No.  8:22-cv-02363-GJH

       Plaintiff,

                            *

v.

                            *

TRICORE SYSTEMS, LLC, *ET AL.*,

                            *

       Defendants.

                            *

*    *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANT, NATHAN VELOZO'S, FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO
PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

      TO:        Plaintiff, Aarow Electrical Solutions, LLC

      FROM:    Defendant, Nathan Velozo

      Defendant, Nathan Velozo, requests that Plaintiff, Aarow Electrical Solutions,

LLC, produce the following documents described and covered by this Document

Production Request pursuant to Fed. R. Civ. P. 34.

**I.
INSTRUCTIONS**

      A.    A written response to this Document Production Request is due on

October 25, 2022 by the agreement of the parties' counsel

B.     The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.     If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.     The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.     The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.     If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.     If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.    Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.    Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.    The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.    The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.    The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.    The term "ESI" refers to electronically stored information.

E.    The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.       The term "trade secrets" means any information or thing that constitutes a trade secret under Maryland law, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

J.       The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.       The term "any" means one or more

L.       The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, summarizing, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.       The term "including" means including, but not limited to.

## III.
## SPECIFIC DEFINITIONS

A.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.    The term "Mr. Reyes" refers to Defendant Anthony Reyes, and his representatives, accountants, attorney, and agents.

D.    The term "Mr. Hummer" refers to Dave Hummer, and his representatives, accountants, attorney, and agents.

E.    The term "Individual Defendants" refers, individually or collectively as the case may be, to the Defendants, Mr. Reyes, Candace Santos, Jonathon Steele, John Taylor, Chad Tippet, and Nathan Velozo, and their representatives, accountants, attorneys, and agents.

F.    The term "Defendants" refers to the Individual Defendants and Tricore.

G.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

H.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

I.     The term "Complaint" refers to the Complaint in this action filed by Aarow against Defendants, Docket Entry No. 1.

J.     The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

**IV.**
**REQUESTED FORM OF PRODUCTION**

Documents should be produced in the following form:

A.     Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.     Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load

8

documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

      C.      Metadata fields should include:

          1.      StartBates (Document ID for pointing to Images and Native files).

          2.      EndBates.

          3.      StartAttach.

          4.      EndAttach.

          5.      PageCount.

          6.      Creation Date.

          7.      Sent Date.

          8.      Received Date.

          9.      Modified Date.

10.     Date Last Saved.

11.     To.

12.     From.

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

10

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.    The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.    The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

> **NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

# V.
# DOCUMENTS REQUESTED

Request No. 1.    Any and all documents relating to communications between Arrow and the Defendants.

**RESPONSE:**

Request No. 2.    Any and all documents relating to the existence of the civil conspiracy that Aarow has alleged in the Complaint.

**RESPONSE:**

Request No. 3.    Any and all documents relating to each, any, or all of the Defendants' participation in the civil conspiracy that you have alleged in the Complaint.

**RESPONSE:**

Request No. 4.    Any and all documents relating to any participation in the civil conspiracy that Aarow alleged in the Complaint of or by persons other than named Defendants.

**RESPONSE:**

Request No. 5.    Any and all documents relating to or supporting your claims of damages as a result of any of the claims asserted in the Complaint, including economic, business, and personal damages.

**RESPONSE:**

Request No. 6.    All access logs and usage logs for computers, e-mail, and electronic devices for each of the Individual Defendants during the time period beginning from September 1, 2013 through the present.

**RESPONSE:**

Request No. 7.    All security measures, policies, and procedures in place to safeguard the Subject Information during the time period beginning from September 1, 2013 through the present.

**RESPONSE:**

Request No. 8.    Any and all documents relating to the Subject Information's value, such as the development costs, benefits to the business, valuations, and premium features.

**RESPONSE:**

Request No. 9.    Any and all documents relating to or supporting any of Aarow's claims that any of the projects specifically identified by the Court's Temporary Restraining Order [ECF No. 14 at 5, ¶ 1] entered into this case were procured by Tricore by wrongful conduct by any or all of the Defendants.

**RESPONSE:**

Request No. 10.    Any and all documents Aarow has relied on in developing, creating, or drafting its Subject Information, including any draft versions of the Subject Information.

**RESPONSE:**


                                        Respectfully submitted,


                                        */s/ Gregory L. Arbogast*
                                        Gregory L. Arbogast
                                        Bar No. 29590
                                        Gebhardt & Smith LLP
                                        1 South Street, Suite 2200
                                        Baltimore, Maryland 21202
                                        (410) 385-5112
                                        Garbogast@gebsmith.com

                                        *Counsel for the Defendants*

13

## <u>Certificate of Service</u>

I HEREBY CERTIFY that on this 5th day of October, 2022, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.


*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

14

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| Plaintiff, | * | Case No.  8:22-cv-02363-GJH |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT, JONATHON STEELE'S, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, Jonathon Steele

Defendant, Jonathon Steele, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

### I.
### INSTRUCTIONS

A.    A written response to this Document Production Request is due on October 25, 2022 by the agreement of the parties' counsel.

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

1

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all

recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.   Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document. Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.   If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

> **Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.   Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.    Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.    The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.    The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.    The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.    The term "ESI" refers to electronically stored information.

E.    The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social

4

media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.      The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.      The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.      The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation, paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble

5

memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.     The term "trade secrets" means any information or thing that constitutes a trade secret under Maryland law, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

J.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.     The term "any" means one or more

L.     The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.     The term "including" means including, but not limited to.

## III.
## SPECIFIC DEFINITIONS

A.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.      The term "Mr. Reyes" refers to Defendant Anthony Reyes, and his representatives, accountants, attorney, and agents.

D.      The term "Mr. Hummer" refers to Dave Hummer, and his representatives, accountants, attorney, and agents.

E.      The term "Individual Defendants" refers, individually or collectively as the case may be, to the Defendants, Mr. Reyes, Candace Santos, Jonathon Steele, John Taylor, Chad Tippet, and Nathan Velozo, and their representatives, accountants, attorneys, and agents.

F.      The term "Defendants" refers to the Individual Defendants and Tricore.

G.      The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

H.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

I.     The term "Complaint" refers to the Complaint in this action filed by Aarow against Defendants, Docket Entry No. 1.

J.     The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.     Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.     Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load

8

documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

  C.  Metadata fields should include:

    1.    StartBates (Document ID for pointing to Images and Native files).

    2.    EndBates.

    3.    StartAttach.

    4.    EndAttach.

    5.    PageCount.

    6.    Creation Date.

    7.    Sent Date.

    8.    Received Date.

    9.    Modified Date.

10.      Date Last Saved.

11.      To.

12.      From.

13.      CC.

14.      BCC.

15.      Subject.

16.      Native filename.

17.      Native File Path.

18.      File type.

19.      Family relationship of documents, i.e. parent/child identification.

20.      Custodian.

21.      Author.

22.      Last saved by.

23.      MD5hash.

24.      As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

E.      All documents should be Bates labeled as follows:

1.      Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.      TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:      The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

**Request No. 1.**                Any and all documents (including fee agreements, reports, correspondence, and electronic communications) provided to, received from, or prepared by each expert witness that you intend to have testify at any trial or hearing in this matter and that pertain to this matter.

**RESPONSE:**

11

Request No. 2.          Any and all documents that you have received from a third party in response to a subpoena, public information act request, freedom of information act request, or other similar request to any third-party.

**RESPONSE:**

Request No. 3.          Any and all documents that you intend to rely upon or introduce into evidence in any trial or hearing in this lawsuit, including, but not limited to any hearing relating to the Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 2].

**RESPONSE:**

Request No. 4.          Any and all documents that tend to support a position that you intend to take at any trial or hearing in this matter, including, but not limited to any hearing relating to the Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 2].

**RESPONSE:**

Request No. 5.          Any and all contracts and agreements by and between Arrow and any of the Individual Defendants, including, but not limited to, any employment agreements.

**RESPONSE:**

Request No. 6.          Any and all employee handbooks; codes of conduct; policies; and procedures manuals; or rules to which you contend the Individual Defendants were bound to while employed by Aarow.

**RESPONSE:**

Request No. 7.         Any and all documents relating to the formation and termination, if any, of the employment relationship with any of the Individual Defendants.

**RESPONSE:**

Request No. 8.         Any and all documents relating to the job description(s) for the position(s) that the Individual Defendants held with Aarow.

**RESPONSE:**

Request No. 9.         Any and all documents relating to the Subject Information that Aarow contends the Individual Defendants misused or misappropriated, including, but not limited to, customer lists, company policies, pricing information and the like.

**RESPONSE:**

Request No. 10.    Any and all documents relating to or supporting your contention that Defendants took or otherwise misused the Subject Information.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 5th day of October, 2022, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast

14