EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

AAROW ELECTRICAL                     *
SOLUTIONS, LLC,

                                     *      Case No.  8:22-cv-02363-GJH
        Plaintiff,

                                     *

v.

                                     *

TRICORE SYSTEMS, LLC, *ET AL.*,

                                     *

        Defendants.

                                     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, ANTHONY REYES'S, FIRST REQUEST**
**FOR PRODUCTION OF DOCUMENTS TO**
**PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:    Defendant, Anthony Reyes

Defendant, Anthony Reyes, requests that Plaintiff, Aarow Electrical Solutions,

LLC, produce the following documents described and covered by this Document

Production Request pursuant to Fed. R. Civ. P. 34.

**I.**
**INSTRUCTIONS**

A.    Fed. R. Civ. P. 34 requires the responding party to serve a written

response to this Document Production Request within thirty (30) days after its

service, except to the extent that the parties otherwise agree to extend the deadline.

1

B.     The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.     If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.     The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.     The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.     If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.     If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.      Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.      Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.      The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.      The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.      The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.     The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.     The term "any" means one or more.

L.     The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.     The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.     The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.     The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

P.     The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.     The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.     The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.     The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.     The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.     The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.     The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.     The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.     The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.     The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

Z.      The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.     The term "Corporate Defendants" refers to NTI and Tricore.

BB.     The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.     The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred. If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

        C.    Metadata fields should include:

           1.        StartBates (Document ID for pointing to Images and Native files).

           2.        EndBates.

           3.        StartAttach.

           4.        EndAttach.

           5.        PageCount.

           6.        Creation Date.

           7.        Sent Date.

           8.        Received Date.

           9.        Modified Date.

           10.      Date Last Saved.

           11.      To.

           12.      From.

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.     All documents should be Bates labeled as follows:

1.     Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.     TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:     The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

**Request No. 1.**     All documents relating to the authorization, use, and/or return by or of Hummer of any Aarow laptop or other electronic device post termination of his employment with Aarow, including, but not limited to any agreements that Aarow entered into with respect to the use of such electronic devices.

**RESPONSE:**

15

Request No. 2.    All documents relating to the authorization, use, and/or return by or of Reyes of any Aarow laptop or other electronic device post termination of his employment with Aarow.

**RESPONSE:**

Request No. 3.    All documents relating to your claim that the Individual Defendants or Corporate Defendants engaged in unfair competition.

**RESPONSE:**

Request No. 4.    All documents relating to your claim of unfair competition against Defendants.

**RESPONSE:**

Request No. 5.    All documents relating to contracts or other business that Aarow contends it did not receive as a result of any wrongdoing by the Defendants.

**RESPONSE:**

Request No. 6.    All documents relating to any contracts Aarow contends were terminated or cancelled or amended as a result of any wrongdoing by the Defendants.

**RESPONSE:**

Request No. 7.    All documents relating to any noncompetition, nondisclosure or non-solicitation agreements to which the Individual Defendants are or were subject with respect to their employment with Aarow.

**RESPONSE:**

Request No. 8.    All documents relating to the means Aarow took to keep its pricing confidential, including, but not limited to non-disclosure agreements.

**RESPONSE:**

Request No. 9.    All documents relating to any correspondence with any of your clients or customers or potential clients or customers relating to the negotiation of a price as to a specific bid, including, but not limited to requests of clients or customers to match a certain price.

**RESPONSE:**

Request No. 10.    Any and all documents evidencing or reflecting Aarow's information technology structure, including, but not limited to, its backup policies, its server retention of documents, its automated save policies, its document retention ability and policies within its Accubid Software and Procore Software; and its disaster recovery systems.

**RESPONSE:**

Request No. 11.    Any and all documents evidencing, reflecting, or documenting price adjustments that you made with respect to a quote or a bid on a project after speaking with or having communication with an agent of the person to whom you submitted the bid or quote.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

17

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| Plaintiff, | * | Case No.  8:22-cv-02363-GJH |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, CANDACE SANTOS', FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS TO
<u>PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC</u>**

TO:          Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, Candace Santos

Defendant, Candace Santos, requests that Plaintiff, Aarow Electrical
Solutions, LLC, produce the following documents described and covered by this
Document Production Request pursuant to Fed. R. Civ. P. 34.

**I.
INSTRUCTIONS**

A.       Fed. R. Civ. P. 34 requires the responding party to serve a written
response to this Document Production Request within thirty (30) days after its
service, except to the extent that the parties otherwise agree to extend the deadline.

1

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

2

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.     Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.     Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more.

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

P.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

7

Z.      The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.     The term "Corporate Defendants" refers to NTI and Tricore.

BB.     The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.     The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.     The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.     The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.     The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The    term    "Subject    Information"    refers    to    any    of    your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

# IV.
# REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images.  The multi-page TIFF or PDF images should be accompanied

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

C.    Metadata fields should include:

1.    StartBates (Document ID for pointing to Images and Native files).

2.    EndBates.

3.    StartAttach.

4.    EndAttach.

5.    PageCount.

6.    Creation Date.

7.    Sent Date.

8.    Received Date.

9.    Modified Date.

10.    Date Last Saved.

11.    To.

12.    From.

13

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.      Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.    The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.    The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

> **NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

Request No. 1.    Any and all Subject Information that Aarow contends the Individual Defendants or Corporate Defendants took or otherwise misappropriated or misused.

**RESPONSE:**

Request No. 2.    Any and all documents relating to or supporting Aarow's claim that the Individual Defendants deleted or otherwise destroyed documents and evidence.

**RESPONSE:**

Request No. 3.    Any and all records relating to Aarow's financials, project receipts (on a project-by-project, client-by-client basis, and customer-by-customer basis), and the projected value of Aarow's contracts, relationships, reputation, and goodwill with its clients and customers and with its potential clients and customers for any electrical work for the time period beginning three years prior to August 23, 2022 until the present, including, but not limited to profit and loss statements, balance sheets, work in progress (WIP) schedules, cash receipts, operating expense reports, projections and analyses, tax returns, reviewed financials, and project contracts.

**RESPONSE:**

Request No. 4.    Any and all documents relating to any communication and correspondence between you and HITT on and after May 26, 2022.

**RESPONSE:**

Request No. 5.    Any and all documents relating to any communication and correspondence between you and Kaiser Permanente on and after May 26, 2022.

**RESPONSE:**

Request No. 6.    Any and all documents relating to any monetary investment, employee or owner time, and/or training that Aarow made or otherwise put into developing and rendering the pricing in its quotes to customers or other contractors.

**RESPONSE:**

16

Request No. 7.    Any and all communications relating to or supporting the factual allegations or claims at issue in this lawsuit between Aarow and the Individual Defendants or Corporate Defendants, including without limitation communications involving the Individual Defendants' manager(s), supervisor(s), or Aarow's human resources representative(s).

**RESPONSE:**

Request No. 8.    Any and all documents relating to any internal communication and correspondence with or regarding the Individual Defendants or Corporate Defendants since March 2022.

**RESPONSE:**

Request No. 9.    Any and all documents relating to the termination of Hummer's employment.

**RESPONSE:**

Request No. 10.    Hummer's personnel file, in any form, maintained by Aarow, including, but not limited to any files concerning Hummer maintained by Hummer's supervisor(s), manager(s), or Hummer's human resources representative(s).

**RESPONSE:**

17

Respectfully submitted,


/s/ Gregory L. Arbogast
Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*


## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the

foregoing Request for Production of Documents to be served on all counsel of record

via the CM/ECF electronic filing system.


/s/ Gregory L. Arbogast
Gregory L. Arbogast

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

AAROW ELECTRICAL                    *
SOLUTIONS, LLC,

                              *      Case No.  8:22-cv-02363-GJH

      Plaintiff,

                              *

v.

                              *

TRICORE SYSTEMS, LLC, *ET AL.*,

                              *

      Defendants.

                              *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, CHAD TIPPETT'S, FIRST REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO**
**PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

      TO:         Plaintiff, Aarow Electrical Solutions, LLC

      FROM:     Defendant, Chad Tippett

      Defendant, Chad Tippett, requests that Plaintiff, Aarow Electrical Solutions,

LLC, produce the following documents described and covered by this Document

Production Request pursuant to Fed. R. Civ. P. 34.

**I.**
**INSTRUCTIONS**

      A.     Fed. R. Civ. P. 34 requires the responding party to serve a written

response to this Document Production Request within thirty (30) days after its

service, except to the extent that the parties otherwise agree to extend the deadline.

B.     The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.     If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.     The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.     The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.     If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.     If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document. Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.      Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.      Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more.

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

P.      The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.      The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.      The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.      The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.      The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.      The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.      The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.      The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.      The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.      The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

Z.     The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.    The term "Corporate Defendants" refers to NTI and Tricore.

BB.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

# IV.
# REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images.  The multi-page TIFF or PDF images should be accompanied

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

      C.    Metadata fields should include:

          1.    StartBates (Document ID for pointing to Images and Native files).

          2.    EndBates.

          3.    StartAttach.

          4.    EndAttach.

          5.    PageCount.

          6.    Creation Date.

          7.    Sent Date.

          8.    Received Date.

          9.    Modified Date.

          10.    Date Last Saved.

          11.    To.

          12.    From.

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

**Request No. 1.**    Any and all documents relating to or evidencing contracts for electrical (including service) work that Aarow has entered into on or after May 26, 2022 with HITT, Kaiser Permanente, or any other contractors or clients on whose projects the Individual Defendants worked, including, but not limited to any and all contractors or owners involved in the projects identified by Aarow in the Temporary Restraining Order.

**RESPONSE:**

15

Request No. 2.    Any and all document(s) relating to or supporting any of Aarow's claims in the Complaint that have not otherwise been produced in response to any of the other Requests for Production of Documents that have been propounded by any of the Defendants.

**RESPONSE:**

Request No. 3.    Any and all correspondence, notes, memos, reports, and documentation relating to any meeting, conversation, solicitation, or communication between any of the Individual Defendants and any clients or customers for which Aarow performed work prior to the termination of the respective Individual Defendants' employment.

**RESPONSE:**

Request No. 4.    Any and all non-disclosure or other confidentiality agreement that you have entered into with any person or entity in the past four years.

**RESPONSE:**

Request No. 5.    Any and all documents relating to or evidencing any restrictions that you have employed in the last three years to access any of Aarow's confidential information or trade secrets.

**RESPONSE:**

Request No. 6.    Any and all documents relating to any of Aarow's trade secrets to which you contend the Individual Defendants had access after termination of their respective employments with Aarow.

**RESPONSE:**

Request No. 7.    Any and all documents relating to communications between or among any of the Defendants, including, but not limited to communication by an Individual Defendant to himself or herself, such as an email from one account to another account owned or controlled by that person.

**RESPONSE:**

Request No. 8.    Any and all documents pertaining to or evidencing the disclosure of any information or document that Aarow claims to constitute a Trade Secret that has been disclosed to a third-party who is not under a confidentiality agreement with Aarow, including, but not limited to, documents reflecting the disclosure of bids, customers names, and customer contact information.

**RESPONSE:**

Request No. 9.    Any and all documents related to or concerning the issuance and/or retrieval of electronic devices to any of the Individual Defendants such as laptop computers and/or cell phones, including, but not limited to, policies, procedures, and rules with respect to such devices, the request for return of such devices, and the actual return of such devices.

**RESPONSE:**

Request No. 10.    Any and all documents evidencing or relating to communications that Aarow had with any person or entity (including internal communication) related to or concerning any of the Defendants during the Relevant Time Period, including, but not limited to communications with general contractors.

**RESPONSE:**

17

Request No. 11.    Produce in native format all versions of any and all of your safety manuals; new hire packets; and forms for quotes and bids and provide the meta data requested above with respect to such versions.

**RESPONSE:**


Respectfully submitted,


/s/ Gregory L. Arbogast
Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*


## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.


/s/ Gregory L. Arbogast
Gregory L. Arbogast

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * |
| | *     Case No.   8:22-cv-02363-GJH |
|     Plaintiff, | * |
| | * |
| v. | * |
| | * |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * |
| | * |
|     Defendants. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### DEFENDANT, CHAD TIPPETT'S, FIRST SET OF INTERROGATORIES TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:         Plaintiff, Aarow Electrical Solutions, LLC

FROM:      Defendant, Chad Tippett

Defendant, Chad Tippett, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

## I.
## INSTRUCTIONS

A.     You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

B.     If there is an objection, the reasons for objection must be stated in lieu of an answer.

1

C.     As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.     As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.     The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.     These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.     Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.     If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to

2

enable the interrogating party to locate and identify the records from which the answer may be ascertained.

I.    Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.    The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.    The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.    The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.    The term "ESI" refers to electronically stored information.

E.    The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data,

3

other business software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation, paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble

4

memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

H.     The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

I.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

J.     The term "any" means one or more.

K.     The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

L.     The term "including" means including, but not limited to.

## III.
## SPECIFIC DEFINITIONS

A.     The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.     The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

5

C.      The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.      The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.      The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.      The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.      The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.      The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.      The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.      The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.      The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

L.      The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

6

M.    The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.    The term "Corporate Defendants" refers to NTI and Tricore.

O.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

R.     The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.     The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.     The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.     The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Confidential Information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

II.    The term "Subject Information" refers to any of your Confidential Information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

JJ.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.    Identify each and every project that Aarow has been awarded for which HITT is the general contractor after the termination of Steele's employment with Aarow, including:

      a.  the date of such award,

      b.  the face amount of the project,

      c.  the realized net revenue of such project for Aarow, and/or

      d.  the projected net revenue of such project for Aarow.

**ANSWER:**

11

Interrogatory No. 2.        Identify each and every project that Aarow has been awarded for which Rand is the general contractor after the termination of Steele's employment with Aarow, including:

        a.  the date of such award,

        b.  the face amount of the project,

        c.  the realized net revenue of such project for Aarow, and/or

        d.  the projected net revenue of such project for Aarow.

**ANSWER:**

Interrogatory No. 3.        Identify each and every project that Aarow has been awarded for which Kaiser Permanente is the contracting counterparty after the termination of Reyes' employment with Aarow, including:

        a.  the date of such award,

        b.  the face amount of the project,

        c.  the realized net revenue of such project for Aarow, and/or

        d.  the projected net revenue of such project for Aarow.

**ANSWER:**

Interrogatory No. 4.        Identify the value of any and all Trade Secrets, Confidential Information, and/or Subject Information that Aarow contends any of the Defendants misappropriated, including in your answer the means by which such value was calculated.

**ANSWER:**

12

Respectfully submitted,

/s/ Gregory L. Arbogast

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.

/s/ Gregory L. Arbogast

Gregory L. Arbogast

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, DAVE HUMMER'S, FIRST REQUEST FOR PRODUCTION**
**OF DOCUMENTS TO**
**PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:    Defendant, Dave Hummer

Defendant, Dave Hummer, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

# I.
# INSTRUCTIONS

A.    Fed. R. Civ. P. 34 requires the responding party to serve a written response to this Document Production Request within thirty (30) days after its service, except to the extent that the parties otherwise agree to extend the deadline.

1

B.      The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.      If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.      The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.      The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.      If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.      If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.      Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.      Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:   books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

       F.     The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

       G.     The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

       H.     The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

6

P.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

7

Z.      The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.     The term "Corporate Defendants" refers to NTI and Tricore.

BB.     The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.     The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.   The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.   The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.   The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.   The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images.  The multi-page TIFF or PDF images should be accompanied

12

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

      C.    Metadata fields should include:

      1.    StartBates (Document ID for pointing to Images and Native files).

      2.    EndBates.

      3.    StartAttach.

      4.    EndAttach.

      5.    PageCount.

      6.    Creation Date.

      7.    Sent Date.

      8.    Received Date.

      9.    Modified Date.

      10.    Date Last Saved.

      11.    To.

      12.    From.

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.      Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.    The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.    The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

Request No. 1.    Any and all documents evidencing or reflecting any and all revenue that you have received from Davis after March 2022 to present.

**RESPONSE:**

Request No. 2.    Any and all documents evidencing or reflecting any and all contracts awarded by City to Aarow during the Relevant Time Period.

**RESPONSE:**

Request No. 3.    Any and all documents evidencing or reflecting any and all revenue that you have received from City after March 2022 to present.

**RESPONSE:**

Request No. 4.    Any and all documents evidencing or reflecting any and all contracts awarded by Sigal to Aarow during the Relevant Time Period.

**RESPONSE:**

Request No. 5.    Any and all documents evidencing or reflecting any and all revenue that you have received from Sigal after March 2022 to present.

**RESPONSE:**

Request No. 6.    Any and all communication that you have had with any employee, owner, or associate of J.E. Richards. regarding or relating to any of the Defendants.

**RESPONSE:**

Request No. 7.    Any and all communication that Chet Gagnon and/or Scott Gagnon has had with or regarding Alpha Craft.

**RESPONSE:**

Request No. 8.    Any and all communication that any employee has had with any person or entity (including internal communications) regarding or related to Alpha Craft.

**RESPONSE:**

16

Request No. 9.     Any and all documents evidencing or reflecting the date on which you changed your service call phone number of your website from Reyes' phone number.

**RESPONSE:**

Request No. 10.     Any and all documents evidencing or reflecting any default, problem, issue, or dispute that Kaiser Permanente had with you during the Relevant Time Period.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

17

## **Certificate of Service**

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.


/s/ Gregory L. Arbogast
Gregory L. Arbogast

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, DAVE HUMMER'S, FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, Dave Hummer

Defendant, Dave Hummer, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

**I.**
**INSTRUCTIONS**

A.     You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

B.     If there is an objection, the reasons for objection must be stated in lieu of an answer.

1

C.      As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.      As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.      The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.      These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.      Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.      If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to enable

2

the interrogating party to locate and identify the records from which the answer may be ascertained.

I.    Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.    The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.    The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.    The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.    The term "ESI" refers to electronically stored information.

E.    The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

3

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.     The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.     The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.     The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more.

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

## III.
## SPECIFIC DEFINITIONS

A.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

5

C.      The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.      The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.      The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.      The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.      The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.      The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.      The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.      The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.      The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

L.      The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

M.    The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.    The term "Corporate Defendants" refers to NTI and Tricore.

O.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

7

R.     The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.     The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.     The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.     The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

II.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.    Identify each and every complaint, issue, or dispute that Kaiser Permanente had with Aarow after March 2022, the cause of such complaint, issue, or dispute, and the resolution of such complaint, issue, or dispute.

**ANSWER:**

Interrogatory No. 2.    For projects identified in the Temporary Restraining Order that Tricore was not awarded, identify how the use by Tricore of any Aarow Trade Secrets or Confidential Information harmed or damaged Aarow and identify the harm or damage that such used caused Aarow with respect to projects that were not awarded to Tricore.

Interrogatory No. 3.    Identify each and every current Aarow employee who has a relationship with Kaiser Permanente, and:

        a.    the relationship such employee has with Kaiser Permanente,

11

b.  and all projects that Kaiser Permanente has awarded to Aarow.

**ANSWER:**

Interrogatory No. 4.    State all facts and identify all documents that support your claim in Count I of the Amended Complaint for the Misappropriation of Trade Secrets under the DTSA.

**ANSWER:**

Interrogatory No. 5.    State all facts and identify all documents that support your claim in Count II of the Amended Complaint for the Misappropriation of Trade Secrets under the MUTSA.

**ANSWER:**

Interrogatory No. 6.    State all facts and identify all documents that support your claim in Count III of the Amended Complaint for the Aiding and Abetting of Misappropriation of Trade Secrets under the DTSA.

**ANSWER:**

Interrogatory No. 7.    State all facts and identify all documents that support your claim in Count IV of the Amended Complaint for the Aiding and Abetting of Misappropriation of Trade Secrets under the MUTSA.

**ANSWER:**

Interrogatory No. 8.    State all facts and identify all documents that support your claim in Count V of the Amended Complaint for the breach of fiduciary duty.

**ANSWER:**

Interrogatory No. 9.        State all facts and identify all documents that support your claim in Count VI of the Amended Complaint for the aiding and abetting of breach of fiduciary duty.

**ANSWER:**

Interrogatory No. 10.        State all facts and identify all documents that support your claim in Count VII of the Amended Complaint for unfair competition.

**ANSWER:**

Interrogatory No. 11.        State all facts and identify all documents that support your claim in Count VIII of the Amended Complaint for civil conspiracy.

**ANSWER:**

Interrogatory No. 12.        State all facts and identify all documents that support your claim in Count IX of the Amended Complaint for tortious interference with contract, including each contract with which the Defendants interfered, the parties to the contract, and the disposition of such contract.

**ANSWER:**

Interrogatory No. 13.        Specifically identify the damages that Aarow has incurred as a result of any wrongful conduct by any of the Defendants, and:

        a.   the means of calculating such damages, and

        b.  the manner in which the wrongful conduct of the Defendants caused such damages.

**ANSWER:**

Interrogatory No. 14.     Specifically identify all revenue generated by the electrical division of Aarow, separately for each individual year, in 2019, 2020, 2021, and in 2022 prior to Steele terminating his employment with Aarow.

**ANSWER:**

Interrogatory No. 15.     Specifically identify all costs incurred on account of the electrical division of Aarow, separately for each individual year, in 2019, 2020, 2021, and in 2022 prior to Steele terminating his employment with Aarow.

**ANSWER:**

Interrogatory No. 16.     Specifically identify all revenue generated by the electrical division of Aarow, separately for each individual year, after Steele terminated his employment with Aarow.

**ANSWER:**

Interrogatory No. 17.     Specifically identify all costs incurred on account of the electrical division of Aarow, separately for each individual year, after Steele terminated his employment with Aarow.

**ANSWER:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

14

Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

15

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
#### (Southern Division)

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### DEFENDANT, DAVID PAUL TAYLOR'S, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:     Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, David Paul Taylor

Defendant, David Paul Taylor, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

### I.
### INSTRUCTIONS

A.     Fed. R. Civ. P. 34 requires the responding party to serve a written response to this Document Production Request within thirty (30) days after its service, except to the extent that the parties otherwise agree to extend the deadline.

1

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.      Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.      Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.      The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.      The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.      The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

6

P.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

Z.      The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.     The term "Corporate Defendants" refers to NTI and Tricore.

BB.     The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.     The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

9

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM. The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by

12

separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.  The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

     C.    Metadata fields should include:

       1.     StartBates (Document ID for pointing to Images and Native files).

       2.     EndBates.

       3.     StartAttach.

       4.     EndAttach.

       5.     PageCount.

       6.     Creation Date.

       7.     Sent Date.

       8.     Received Date.

       9.     Modified Date.

      10.     Date Last Saved.

      11.     To.

      12.     From.

13.    CC.

14.    BCC.

15.    Subject.

16.    Native filename.

17.    Native File Path.

18.    File type.

19.    Family relationship of documents, i.e. parent/child identification.

20.    Custodian.

21.    Author.

22.    Last saved by.

23.    MD5hash.

24.    As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.    Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

> **NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

Request No. 1.    Any and all documents evidencing or supporting your claim that any Defendant aided and abetted any wrongful conduct by any person or entity.

**RESPONSE:**

Request No. 2.    Any and all documents evidencing or supporting your claim that any Defendant breached its fiduciary duty to Aarow.

**RESPONSE:**

Request No. 3.    Any and all documents evidencing or supporting your claim that any Defendant tortiously interfered with any Aarow contract.

**RESPONSE:**

Request No. 4.    Any and all documents evidencing or reflecting any and all revenue that you have received between January 1, 2019 and March 2022.

**RESPONSE:**

Request No. 5.    Any and all documents relating to any of the spreadsheets referenced in paragraphs 50 through 54 of the Amended Complaint.

**RESPONSE:**

Request No. 6.    Documents sufficient to show Aarow's EBITDA for each year since its founding.

**RESPONSE:**

Request No. 7.    Any and all documents relating to anticipated or forecasted profits from 2020 through the present, including, but not limited to, budgets and sales pipelines.

**RESPONSE:**

Request No. 8.    Any and all documents relating to anticipated or sought-after projects Aarow attempted to secure from 2022 through the present.

**RESPONSE:**

Request No. 9.    Any and all documents relating to negotiations with any party or third-party when a different subcontractor's bid price was disclosed as part of negotiations, including, but not limited to, text messages between Aarow and any

employee or agent of HITT, Sigal, Hensel Phelps, and also bid boards showing any change in bid price.

**RESPONSE:**

Request No. 10.    Any and all documents relating to alleged violations by NTI set forth by the Complaint.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

17

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the

foregoing Request for Production of Documents to be served on all counsel of record

via the CM/ECF electronic filing system.


<u>*/s/ Gregory L. Arbogast*</u>
Gregory L. Arbogast

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT, DAVID PAUL TAYLOR'S, FIRST SET OF INTERROGATORIES TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:         Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, David Paul Taylor

Defendant, David Paul Taylor, requests that Plaintiff, Aarow Electrical Solutions, LLC, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

## I.
## INSTRUCTIONS

A.     You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

B.     If there is an objection, the reasons for objection must be stated in lieu of an answer.

1

C.    As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.    As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.    The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.    These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.    Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.    If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to enable

the interrogating party to locate and identify the records from which the answer may be ascertained.

I.    Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.    The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.    The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.    The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.    The term "ESI" refers to electronically stored information.

E.    The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

3

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

  F. The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

  G. The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

  H. The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

4

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

L.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

M.    The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.    The term "Corporate Defendants" refers to NTI and Tricore.

O.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

7

R.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

II.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

# IV.
## INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.    Identify each and every wrongful use by John Taylor of any file downloaded from Accubid Software, as described in Paragraph 72 of the Amended Complaint and:

      a.  the date that such document was wrongfully used,

      b.  the means by which such document was wrongfully used, and

      c.  the harm that such wrongful use caused Aarow.

**ANSWER:**


Interrogatory No. 2.    Identify each and every act that Reyes took to interfere with any Aarow contract or potential contract and

      a.  the date that Reyes took such act, and

      b.  the harm that such act caused Aarow.

11

**ANSWER:**

Interrogatory No. 3.        Identify each and every tortious overt act that Wilson committed, and:

        a.  the tort that such act constitutes or otherwise furthered,

        b.  the date that Wilson took such act, and

        c.  the harm that such specific act caused Aarow.

**ANSWER:**

Interrogatory No. 4.        Specifically identify each and every injurious falsehood that any Individual Defendant or Corporate Defendant uttered or published, and:

        a.  the date of such utterance or publishing,

        b.  the recipients of the utterance or publishing, and

        c.  the harm that such injurious falsehood caused Aarow.

**ANSWER:**

Interrogatory No. 5.        Specifically identify each and every way that any Aarow Trade Secret or Confidential Information assisted Tricore and:

        a.  the date that Tricore used such information,

        b.  the means by which Tricore used such information, and

        c.  identify the harm that the use of such information caused Aarow.

**ANSWER:**

Interrogatory No. 6.        Identify the electrical subcontractor awarded each of the projects identified in the Temporary Restraining Order.

**ANSWER:**

Interrogatory No. 7.        Identify the date that the final design drawings were issued for each of the projects identified in the Temporary Restraining Order.

**ANSWER:**

Interrogatory No. 8.        For any projects in which the final design drawings were issued after any of the Individual Defendants prepared a bid for Aarow, state how the use or possession of the Aarow bid would impact or benefit Tricore in preparing a bid for different or updated design drawings.

**ANSWER:**

Interrogatory No. 9.        Identify the general contractors awarded each of the projects identified in the Temporary Restraining Order, state whether Aarow submitted a bid to the general contractor awarded each project, and, if Aarow did not submit such a bid, state how the use or possession of an Aarow bid to a general contractor to whom Aarow did not submit a bid would impact, impair, or harm Aarow.

**ANSWER:**

Interrogatory No. 10.        State whether Aarow would have performed the NTI Renovation Project at cost of materials without a profit.

**ANSWER:**

Interrogatory No. 11.        Identify each and every project that Aarow has performed at the cost of materials without a profit.

**ANSWER:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

AAROW ELECTRICAL                          *
SOLUTIONS, LLC,

                      *     Case No.  8:22-cv-02363-GJH

      Plaintiff,

                      *

v.

                      *

TRICORE SYSTEMS, LLC, *ET AL.*,

                      *

      Defendants.

                      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT, JOHN TAYLOR'S, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:       Plaintiff, Aarow Electrical Solutions, LLC

FROM:   Defendant, John Taylor

Defendant, John Taylor, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

## I.
## INSTRUCTIONS

A.    Fed. R. Civ. P. 34 requires the responding party to serve a written response to this Document Production Request within thirty (30) days after its service, except to the extent that the parties otherwise agree to extend the deadline.

B.      The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.      If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.      The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.      The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.      If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.      If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document. Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.     Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.     Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.      The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.      The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.      The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

6

P.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

7

Z.     The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.    The term "Corporate Defendants" refers to NTI and Tricore.

BB.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

10

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM. The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq.*

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The    term    "Subject    Information"    refers    to    any    of    your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images.  The multi-page TIFF or PDF images should be accompanied

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

     C.     Metadata fields should include:

          1.          StartBates (Document ID for pointing to Images and Native files).

          2.          EndBates.

          3.          StartAttach.

          4.          EndAttach.

          5.          PageCount.

          6.          Creation Date.

          7.          Sent Date.

          8.          Received Date.

          9.          Modified Date.

          10.         Date Last Saved.

          11.         To.

          12.         From.

13

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.     All documents should be Bates labeled as follows:

      1.     Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

      2.     TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

> **NOTE:     The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

Request No. 1.     Any and all documents containing the name, or that has the name in the meta data, of Power Services, Truland, or Rosendin, or that otherwise were created or used by Power Services, Truland, or Rosendin.

**RESPONSE:**

Request No. 2.     Any and all documents containing the name Power Concepts or that otherwise were created or used by Power Concepts.

**RESPONSE:**

Request No. 3.    Any and all documents evidencing, comprising, or otherwise referring to documents that Aarow contends any of the Individual Defendants deleted, including, but not limited to, forensic investigation reports, data in slack or unallocated space, or other documents evidencing a deletion of data.

**RESPONSE:**

Request No. 4.    Any and all correspondence between Aarow and Steele and/or Reyes regarding, evidencing, relating, or pertaining to the hiring of Steele and/or Reyes.

**RESPONSE:**

Request No. 5.    Any and all duplicates, triplicates, or copies of documents or data that Aarow contends that any of the Individual Defendants destroyed or deleted, including, but not limited to copies of such documents saved on Aarow's server or disaster recovery systems.

**RESPONSE:**

Request No. 6.    Any and all documents evidencing or reflecting any and all revenue that you have received from HITT after March 2022 to the present.

**RESPONSE:**

Request No. 7.    Any and all documents evidencing or reflecting any and all revenue that you have received from Kaiser Permanente during the Relevant Time Period, including Service Level Agreements.

**RESPONSE:**

Request No. 8.    Any and all documents evidencing or reflecting any and all revenue that you have received from Kaiser Permanente after March 2022 to the present, including Service Level Agreements.

**RESPONSE:**

Request No. 9.    Any and all documents evidencing or reflecting any and all contracts awarded by Rand to Aarow during the Relevant Time Period.

**RESPONSE:**

Request No. 10.    Any and all documents evidencing or reflecting any and all revenue that you have received from Rand after March 2022 to present.

**RESPONSE:**

Request No. 11.    Any and all documents evidencing or reflecting any and all contracts awarded by Davis to Aarow during the Relevant Time Period.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

17

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.


<u>/s/ Gregory L. Arbogast</u>
Gregory L. Arbogast

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

AAROW ELECTRICAL      \*
SOLUTIONS, LLC,

     \*     Case No.  8:22-cv-02363-GJH

     Plaintiff,

     \*

v.      \*

TRICORE SYSTEMS, LLC, *ET AL.*,      \*

     Defendants.      \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT, JOHN TAYLOR'S, FIRST SET OF INTERROGATORIES TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, John Taylor

Defendant, John Taylor, requests that Plaintiff, Aarow Electrical Solutions, LLC, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

## I.
## INSTRUCTIONS

A.     You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

1

B.     If there is an objection, the reasons for objection must be stated in lieu of an answer.

C.     As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.     As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.     The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.     These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.     Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.    If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to enable the interrogating party to locate and identify the records from which the answer may be ascertained.

I.    Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.    The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.    The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.    The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.    The term "ESI" refers to electronically stored information.

E.    The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and

3

character (whether copy or original), including by way of example, but not limited to the following: books, records, ledgers, accounting software data, other business software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.     The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.     The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

4

H.     The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation, paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.     The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.     The term "any" means one or more.

L.     The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.     The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A.     The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

5

B.     The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.     The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.     The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.     The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.     The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.     The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.     The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.     The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.     The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.     The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

6

L.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

M.    The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.    The term "Corporate Defendants" refers to NTI and Tricore.

O.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees,

agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

R.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of

8

them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.     The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.     The term "Segal" refers to Segal Construction Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.     The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

II.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

# IV.
# INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.        Identify each and every means by which any of the Defendants wrongfully worked to misappropriate Aarow's electrical business.

**ANSWER:**

Interrogatory No. 2.        State how the means by which Defendants wrongfully worked to misappropriate Aarow's electrical business caused the loss of any of Aarow's electrical business.

**ANSWER:**


Interrogatory No. 3.        If you contend that the development of the spreadsheet identified in Paragraph 50 of the Amended Complaint was wrongful, specifically identify each and every reason that such development was wrongful.

**ANSWER:**

11

Interrogatory No. 4.        Identify any harm that the development of the spreadsheet identified in Paragraph 50 of the Amended Complaint caused Aarow.

**ANSWER:**

Interrogatory No. 5.        If you contend that it was wrongful for Santos to discuss leaving Aarow with Steele as identified in Paragraph 63 of the Amended Complaint, specifically identify each and every reason that such discussion was wrongful.

**ANSWER:**

Interrogatory No. 6.        Identify the harm that Santos's discussion with Rick Steele about leaving Aarow caused Aarow.

**ANSWER:**

Interrogatory No. 7.        State whether you contend that hiring Steele constituted tortious conduct by Tricore.

**ANSWER:**

Interrogatory No. 8.        Identify the tort that hiring Rick Steele constitutes.

**ANSWER:**

Interrogatory No. 9.        Identify each and every reason that hiring Steele was wrongful.

**ANSWER:**

Interrogatory No. 10.        Identify the harm that hiring Rick Steele caused Aarow.

12

**ANSWER:**

Interrogatory No. 11.     State whether you contend that hiring any of the Individual Defendants constituted tortious conduct by Tricore.

**ANSWER:**

Interrogatory No. 12.     Identify the tort that hiring any of the Individual Defendants constitutes.

**ANSWER**:

Interrogatory No. 13.     Identify each and every reason that hiring the Individual Defendants was wrongful.

**ANSWER:**

Interrogatory No. 14.     Identify the harm that hiring the Individual Defendants caused Aarow.

**ANSWER:**

Interrogatory No. 15.     Specifically describe the "scheme" identified in Paragraph 66 of the Amended Complaint.

**ANSWER:**

Interrogatory No. 16.     Specifically describe whether any aspects of that scheme constituted tortious conduct.

**ANSWER:**

Interrogatory No. 17.     Identify the tort that the aspects of the scheme constituted.

**ANSWER:**

Interrogatory No. 18.    Identify the harm that such aspects of the scheme caused Aarow.

**ANSWER:**

Interrogatory No. 19.    Identify each and every Aarow document that any Individual Defendant sent to any other Individual Defendant or Corporate Defendants while the sender was employed by Aarow, as identified in Paragraph 67 of the Amended Complaint.

**ANSWER:**

Interrogatory No. 20.    State the importance of each and every Aarow document that any Individual Defendant sent to any other Individual Defendant or Corporate Defendants while the sender was employed by Aarow, as identified in Paragraph 67 of the Amended Complaint.

**ANSWER:**

Interrogatory No. 21.    Identify the harm caused to Aarow by each and every Aarow document that any Individual Defendant sent to any other Individual Defendant or Corporate Defendant while the sender was employed by Aarow, as identified in Paragraph 67 of the Amended Complaint.

**ANSWER:**

Interrogatory No. 22.    Identify each and every Aarow document that Steele forwarded to his gmail address that was later used by Tricore, as set forth in Paragraph 69 of the Amended Complaint, and:

      a. state the date that such document was used by Tricore

14

    b.  the means by such document was used by Aarow, and

    c.  the harm that such use caused Aarow.

**ANSWER:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| | * | |
| Defendants. | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

**DEFENDANT, MICHAEL GREGORY WILSON'S, FIRST REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO**
**PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:      Defendant, Michael Gregory Wilson

Defendant, Michael Gregory Wilson, requests that Plaintiff, Aarow Electrical

Solutions, LLC, produce the following documents described and covered by this

Document Production Request pursuant to Fed. R. Civ. P. 34.

## I.
## INSTRUCTIONS

A.      Fed. R. Civ. P. 34 requires the responding party to serve a written

response to this Document Production Request within thirty (30) days after its

service, except to the extent that the parties otherwise agree to extend the deadline.

1

B.     The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.     If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.     The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.     The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.     If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.     If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document. Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.      Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.      Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more.

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

P.     The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.     The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.     The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.     The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.     The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.     The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.     The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.     The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.     The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.     The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

Z.     The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.    The term "Corporate Defendants" refers to NTI and Tricore.

BB.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM.  The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images.  The multi-page TIFF or PDF images should be accompanied

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file.   The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

    C.    Metadata fields should include:

        1.    StartBates (Document ID for pointing to Images and Native files).

        2.    EndBates.

        3.    StartAttach.

        4.    EndAttach.

        5.    PageCount.

        6.    Creation Date.

        7.    Sent Date.

        8.    Received Date.

        9.    Modified Date.

        10.    Date Last Saved.

        11.    To.

        12.    From.

13

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.      All documents should be Bates labeled as follows:

      1.      Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

      2.      TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

      **NOTE:      The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

**Request No. 1.**      All documents evidencing or reflecting the salaries and bonuses paid, cost of employment benefits for, cost of employment and payroll taxes for, cost of insurance for, and other expenses incurred as a result of the employment of any of the Individual Defendants.

**RESPONSE:**

**Request No. 2.**      Any and all documents evidencing or supporting your claim for damages.

15

**RESPONSE:**

Request No. 3.    Any and all documents evidencing or related to any shared expenses that you have with Alpha Craft and/or any Alpha Craft employees or contractors that you have paid.

**RESPONSE:**

Request No. 4.    Any and all documents that you have in your possession regarding, related to, or evidencing the bid process, bid revisions, and actual bids for the following projects:

  a. Kaiser Permanente/Bloom Rockville;

  b. Guardian Generator 8605 Cameron Street;

  c. NTI Helgerman Court;

  d. UHS Psychiatric Institute Admin Relocation;

  e. DD3 34A19 Demo Projector; and

  f. DD3 5B84 Sound Masking.

**RESPONSE:**

Request No. 5.    Any and all documents evidencing or supporting your claim that "Wilson personally communicated with general contractors regarding Aarow and Tricore bids with the understanding that there was the formal Aarow that bid projects (as its own independent entity)."

**RESPONSE:**

Request No. 6.    Any and all documents evidencing or supporting your claim that "Klicka engaged in the same or similar conduct as Mike Wilson."

16

**RESPONSE:**

Request No. 7.    Any and all documents evidencing or supporting your claim that the Defendants solicited "Aarow's field workers to leave Aarow and work for Tricore."

**RESPONSE:**

Request No. 8.    Any and all documents evidencing or reflecting your claim that any of the Defendants "spread injurious falsehoods" regarding Aarow, including documents evidencing and relating to the information disclosed and the injury sustained as a result thereof.

**RESPONSE:**

Request No. 9.    Any and all documents evidencing or reflecting your claim that Tricore was awarded any project identified in the Temporary Restraining Order.

**RESPONSE:**

Request No. 10.    Any and all documents evidencing or supporting your claim that the Defendants violated the DTSA and/or MUTSA.

**RESPONSE:**

17

Respectfully submitted,

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, MICHAEL GREGORY WILSON'S,**
**FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:    Plaintiff, Aarow Electrical Solutions, LLC

FROM:    Defendant, Michael Gregory Wilson

Defendant, Michael Gregory Wilson, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

# I.
# INSTRUCTIONS

A.    You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

B.    If there is an objection, the reasons for objection must be stated in lieu of an answer.

1

C.    As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.    As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.    The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.    These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.    Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.    If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to enable

2

the interrogating party to locate and identify the records from which the answer may be ascertained.

I.      Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

3

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

4

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

C.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

L.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

M.     The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.     The term "Corporate Defendants" refers to NTI and Tricore.

O.     The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.     The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

7

R.      The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.      The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.      The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.      The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.     The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.     The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.     The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

II.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.    Identify all trade secrets that Aarow contends any Individual Defendant or Corporate Defendant misused or misappropriated and for each such trade secret:

        a.  identify the individual who misused or misappropriated such trade secret,

        b.  the date it was misused or misappropriated, and

        c.  the person or entity to whom the individual provided the trade secret.

**ANSWER:**

Interrogatory No. 2.    Identify all Confidential Information that does not rise to the level of a trade secret that Aarow contends any Individual Defendant or

11

Corporate Defendant misused or misappropriated and for each such Confidential Information:

        a.  identify the individual who misused or misappropriated such Confidential Information,

        b.  the date it was misused or misappropriated, and

        c.  the person or entity to whom the individual provided the Confidential Information.

**Answer**:

Interrogatory No. 3.     Identify each and every measure that Aarow employs to keep its Trade Secrets confidential.

**ANSWER:**

Interrogatory No. 4.     Identify all of the resources employed by Aarow to enact measures that Aarow employs to keep its Trade Secrets confidential.

**ANSWER:**

Interrogatory No. 5.     Identify each and every third-party or individual who is not subject to a confidentiality agreement or non-disclosure agreement to whom Aarow has disclosed each and every Trade Secret, and:

        a.  the date of such disclosure, and

        b.  the circumstances surrounding each such disclosure.

**ANSWER:**

Interrogatory No. 6.     Identify all economic value generated from each Trade Secret and for such economic value:

       a.  identify the Trade Secret to which the value relates and

       b.  the reason that third-parties do not have the ability to generate the same economic value.

**ANSWER:**

Interrogatory No. 7.     Identify any and all unique features of bids that Aarow generates for electrical work.

**ANSWER:**

Interrogatory No. 8.     Identify the portions of bid that Aarow generates for electrical work that are not automatically generated by publicly-available software, such as Accubid Software or Procore Software.

**ANSWER:**

Interrogatory No. 9.     Identify each portion of Aarow's new hire paperwork that is unique to Aarow and that is not generally publicly available.

**ANSWER:**

Interrogatory No. 10.     Identify the economic value that Aarow's new hire paperwork provides to Aarow.

**ANSWER:**

Interrogatory No. 11.     Specifically identify all aspects of Aarow's pricing strategy that is unique to Aarow from which Aarow derives independent economic value.

**ANSWER:**

13

Interrogatory No. 12.    State the independent economic value that Aarow derives from Aarow's pricing strategy.

**ANSWER:**

Interrogatory No. 13.    Specifically identify all aspects of Aarow's constructing strategy that is unique to Aarow from which Aarow derives independent economic value.

**ANSWER:**

Interrogatory No. 14.    State the independent economic value that Aarow derives from Aarow's constructing strategy.

**ANSWER:**

Interrogatory No. 15.    Specifically identify each and every time that a general contractor, contractor, or owner to whom Aarow has submitted a bid contacted Aarow to negotiate the price downward by disclosing another subcontractor's bid price.

**ANSWER:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200

14

Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

### Certificate of Service

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| Plaintiff, | * | Case No.  8:22-cv-02363-GJH |
| | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |
| | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANT, NATHAN VELOZO'S, FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO
PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:    Defendant, Nathan Velozo

Defendant, Nathan Velozo, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

## I.
## INSTRUCTIONS

A.      Fed. R. Civ. P. 34 requires the responding party to serve a written response to this Document Production Request within thirty (30) days after its service, except to the extent that the parties otherwise agree to extend the deadline.

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document.  Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.       Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.       Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.       The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.       The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.       The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.       The term "ESI" refers to electronically stored information.

E.       The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more.

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

P.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

Z.     The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.     The term "Corporate Defendants" refers to NTI and Tricore.

BB.     The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.     The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.     The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

9

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

10

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM. The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.    The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

# IV.
# REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred.  If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied by

separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

      C.    Metadata fields should include:

        1.    StartBates (Document ID for pointing to Images and Native files).

        2.    EndBates.

        3.    StartAttach.

        4.    EndAttach.

        5.    PageCount.

        6.    Creation Date.

        7.    Sent Date.

        8.    Received Date.

        9.    Modified Date.

        10.    Date Last Saved.

        11.    To.

        12.    From.

13.     CC.

14.     BCC.

15.     Subject.

16.     Native filename.

17.     Native File Path.

18.     File type.

19.     Family relationship of documents, i.e. parent/child identification.

20.     Custodian.

21.     Author.

22.     Last saved by.

23.     MD5hash.

24.     As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.     Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.     All documents should be Bates labeled as follows:

1.     Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.     TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

> **NOTE:     The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

## V.
## DOCUMENTS REQUESTED

Request No. 1.     Any and all documents relating to communications between Aarow and any of the Defendants during the Relevant Time Period.

**RESPONSE:**

Request No. 2.     Any and all documents relating to the existence of the civil conspiracy that Aarow has alleged in the Amended Complaint.

**RESPONSE:**

15

Request No. 3.    Any and all documents relating to each, any, or all of the Defendants' participation in the civil conspiracy that you have alleged in the Amended Complaint, including, but not limited to, documents evidencing overt acts committed in furtherance of such conspiracy.

**RESPONSE:**

Request No. 4.    Any and all documents relating to any participation in the civil conspiracy that Aarow alleged in the Amended Complaint of or by persons other than named Defendants.

**RESPONSE:**

Request No. 5.    Any and all documents relating to or supporting your claims of damages as a result of any of the claims asserted in the Amended Complaint, including economic, business, and personal damages.

**RESPONSE:**

Request No. 6.    All access logs and usage logs for computers, e-mail, network access, intranet access, remote access, VPN access, and electronic devices for each of the Individual Defendants during the Relevant Time Period, including, but not limited to, any such access that was secured after such Individual Defendant left the employ of Aarow.

**RESPONSE:**

Request No. 7.    All security measures, policies, and procedures in place to safeguard the Subject Information during the Relevant Time Period.

**RESPONSE:**

16

Request No. 8.    Any and all documents relating to the Subject Information's value, such as the development costs, benefits to the business, valuations, premium features, unique aspects, and/or depreciation schedules.

**RESPONSE:**

Request No. 9.    Any and all documents relating to or supporting any of Aarow's claims that any of the projects specifically identified by the Court's Temporary Restraining Order [ECF No. 14 at 5, ¶ 1] entered into this case were procured by Tricore by wrongful conduct by any or all of the Defendants.

**RESPONSE:**

Request No. 10.    Any and all documents Aarow has relied on in developing, creating, or drafting its Subject Information, including any draft versions of the Subject Information.

**RESPONSE:**

Request No. 11.    An organizational chart showing any and all affiliated entities, subsidiaries, and parent organizations.

**RESPONSE:**

Request No. 12.    An employee registry showing each employee of Aarow from January 1, 2020 to Present and any such document evidencing such employees' date of hire and position.

**RESPONSE:**

Respectfully submitted,

/s/ Gregory L. Arbogast

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

### Certificate of Service

I HEREBY CERTIFY that on this 3rd of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

/s/ Gregory L. Arbogast

Gregory L. Arbogast

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * |
| Plaintiff, | *        Case No.   8:22-cv-02363-GJH |
| | * |
| v. | * |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * |
| Defendants. | * |
| | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANT, NATHAN VELOZO'S, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:      Defendant, Nathan Velozo

Defendant, Nathan Velozo, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

## I.
## INSTRUCTIONS

A.    You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

B.    If there is an objection, the reasons for objection must be stated in lieu of an answer.

1

C.     As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.     As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.     The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.     These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.     Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.     If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to enable

2

the interrogating party to locate and identify the records from which the answer may be ascertained.

I.     Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:   books, records, ledgers, accounting software data, other business

3

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

     F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

     G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

     H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

4

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.      The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.      The term "any" means one or more.

L.      The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.      The term "including" means including, but not limited to.

## III.
## SPECIFIC DEFINITIONS

A.      The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.      The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

5

C.     The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.     The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.     The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.     The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.     The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.     The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.     The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.     The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.     The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

L.     The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

6

M.      The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.      The term "Corporate Defendants" refers to NTI and Tricore.

O.      The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.      The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.      The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

7

R.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.      The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.      The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.      The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

II.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.    Identify the date of hire by Aarow of each of the Individual Defendants, to the extent applicable.

**ANSWER:**

Interrogatory No. 2.    Identify the date on which the employment of each Individual Defendant terminated, to the extent applicable.

**ANSWER:**

Interrogatory No. 3.    Upon hiring each of the Individual Defendants, identify such Defendant's prior employer and what information, documents, client lists, and client relationships such Defendant brought to Aarow from such Defendant's prior employer.

**ANSWER:**

Interrogatory No. 4.        Identify the total annual revenue received from the following general contractors for the three years prior to the hiring of Steele:

a.  HITT; and

b.  Rand.

**ANSWER:**

Interrogatory No. 5.        Identify the total annual revenue received from Kaiser Permanente for the three years prior to the hiring of Reyes.

**ANSWER:**

Interrogatory No. 6.        Identify each Individual Defendant who retained an Aarow-owned electronic device after the date of such Individual Defendant's termination of his/her employment with Aarow and:

a.  state the circumstances surrounding the retention of such electronic device,

b.  the reasons Aarow allowed such Individual Defendant to retain an electronic device,

c.  the access to Aarow information and documents that such Individual Defendant had post-termination of his/her employment with Aarow,

d.  any contractual obligations to which such former employee was subject after termination of his/her employment regarding such device or data, and

e.  any fiduciary duties that such Individual Defendant owed to Aarow after termination of his/her employment regarding such device or data.

**ANSWER:**

Respectfully submitted,

/s/ Gregory L. Arbogast

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

### Certificate of Service

I HEREBY CERTIFY that on this 3rd of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.

/s/ Gregory L. Arbogast

Gregory L. Arbogast

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| v. | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT, JONATHON STEELE'S, FIRST REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO**
**PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:        Plaintiff, Aarow Electrical Solutions, LLC

FROM:      Defendant, Jonathon Steele

Defendant, Jonathon Steele, requests that Plaintiff, Aarow Electrical Solutions, LLC, produce the following documents described and covered by this Document Production Request pursuant to Fed. R. Civ. P. 34.

**I.**
**INSTRUCTIONS**

A.    Fed. R. Civ. P. 34 requires the responding party to serve a written response to this Document Production Request within thirty (30) days after its service, except to the extent that the parties otherwise agree to extend the deadline.

1

B.    The response to this Document Production Request must indicate with respect to each request (1) whether production will be provided as requested or (2) whether the request is objected to and the reason for the objection.

C.    If objection is made to part of an item or category, the part must be specified and production must be permitted as to the remaining parts. An objection must state whether any responsive materials are being withheld on the basis of that objection. If objection is made to the requested form or forms for producing electronically stored information - or if no form was specified in the request - the responding party must state the form or forms it intends to use.

D.    The responding party must produce all of the documents and items called for in each request unless a proper and valid objection is raised.

E.    The requesting party proposes that the document production be made at the law offices of Gebhardt & Smith LLP, One South Street, Suite 2200, Baltimore, Maryland 21202, at 10:00 a.m. (or at such other time and place as may be agreed upon by the parties) on the date that such responses are due.

F.    If any requested document was, but no longer is, in the responding party's possession, custody, or control, the responding party must furnish a description of that document, and indicate the circumstances upon which it left the responding party's possession, custody, or control, and its present whereabouts, if known.

G.    If the responding party claims that any requested document is privileged and refuses to produce the document for this reason, the responding party

should provide a privilege log that specifies the privilege asserted and that identifies (1) the document, including the bates numbers if available, (2) the author, (3) all recipients, and (4) the subject matter in as much detail as possible without disclosing the privileged information.

H.    Where a document is requested, the request applies whether the document is in the responding party's possession or in the possession of the responding party's agents, employees, representatives, accountants or attorneys (unless privileged), or any other person through whom the responding party has access or the ability to gain access to such document. Where a document is requested, the request applies whether the document called for was made or received by the responding party or someone acting on the responding party's behalf, including the responding party's the agents, employees, representatives, or accountants or attorneys (unless privileged).

I.    If any electronically stored information is not produced because it is not reasonably accessible or would be unduly burdensome or expensive to produce, the responding party should identify the electronically stored information and explain as comprehensively and in as much detail as possible why the electronically stored information is not reasonably accessible or would be unduly burdensome or expensive to produce.

**Note: The party serving this document request is willing to meet and confer on this point prior to a response to this production request or a production of documents to attempt to agree upon a resolution of the matter.**

J.     Responses to this Document Production Request must be timely supplemented in accordance with the Federal Rules of Civil Procedure.

K.     Certain terms used in this Document Production Request shall have the meanings set forth below unless the context clearly requires otherwise.

## II.
## GENERAL DEFINITIONS

A.     The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.     The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.     The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.     The term "ESI" refers to electronically stored information.

E.     The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

4

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

5

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

N.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

O.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

P.    The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

Q.    The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

R.    The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

S.    The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

T.    The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

U.    The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

V.    The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

W.    The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

X.    The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

Y.    The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

Z.    The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

AA.    The term "Corporate Defendants" refers to NTI and Tricore.

BB.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

CC.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

DD.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

EE.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

FF.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

GG.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

HH.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

II.     The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

JJ.     The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

KK.     The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

LL.     The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

MM.     The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

NN.     The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

OO.     The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

PP.     The term "Accubid Software" refers to any software program created by Trimble Inc.

QQ.     The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

RR.     The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

SS.     The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TT.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

UU.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

VV.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

## IV.
## REQUESTED FORM OF PRODUCTION

Documents should be produced in the following form:

A.    Documents that are maintained solely in paper or hard copy form may be produced in this form or as scanned images with Bates or other identifying numbers to signify the source of their production and their identity.

B.    Electronically stored information should be produced either in native format or in a static image format, with native format preferred. If electronically stored information is produced in native format, the native documents should be produced with a text file containing extracted metadata corresponding with the fields listed in Subsection C and any additional file-location information necessary to load documents into Relativity. If electronically stored information is produced as static images, the electronically stored information should be produced either as multi-page TIFF or PDF images. The multi-page TIFF or PDF images should be accompanied

by separate OCR text files, either saved with a uniform naming convention in a separate folder labeled TEXT in which each OCR text file is named using the Document ID of its corresponding image file, or accompanied by a control file matching the Document ID of each TIFF or PDF image to the file path of its corresponding OCR text file. The documents shall be produced with: (1) one multi-page TIFF or PDF image per native document; (2) one text file containing OCR per native document; (3) a text file containing extracted metadata corresponding with the fields listed in Subsection C; and (3) all files necessary to load the images and OCR into a commercially available e-discovery database such as Relativity.

     C.    Metadata fields should include:

         1.    StartBates (Document ID for pointing to Images and Native files).

         2.    EndBates.

         3.    StartAttach.

         4.    EndAttach.

         5.    PageCount.

         6.    Creation Date.

         7.    Sent Date.

         8.    Received Date.

         9.    Modified Date.

         10.    Date Last Saved.

         11.    To.

         12.    From.

13

13.    CC.

14.    BCC.

15.    Subject.

16.    Native filename.

17.    Native File Path.

18.    File type.

19.    Family relationship of documents, i.e. parent/child identification.

20.    Custodian.

21.    Author.

22.    Last saved by.

23.    MD5hash.

24.    As to digital calendars, (a) appointment date and time, (b) participants, and (c) location.

D.    Electronically stored information that cannot be fully accessed or viewed other than in native format, such as Excel spreadsheets or databases, are requested to be produced in native format with at least all accompanying metadata specified in Subsection C above, along with all software necessary to interpret the produced information if such software is not readily commercially available.

14

E.    All documents should be Bates labeled as follows:

1.    Native documents should be produced using the Document ID as the filename.   The original filename for each native document should be extracted and stored in the "Native Filename" field of the extracted metadata.

2.    TIFF or PDF image files should also be produced using the Document ID as the filename, and should have the Document ID imprinted on the first page of the image in the lower right-hand corner as to not obstruct the view of any text or images on the document itself.   The Document ID should be incremented and imprinted on each subsequent page of the document in the lower right-hand corner as to not obstruct the view of any text or images on the document, in the same manner one would apply Bates-labels.

**NOTE:    The party serving this document request is willing to meet and confer before any response to this Production Request is sent or before any production is made to discuss and agree upon a form of production.**

### V.
### DOCUMENTS REQUESTED

Request No. 1.    Any and all documents (including fee agreements, reports, correspondence, and electronic communications) provided to, received from, or prepared by each expert witness that you intend to have testify at any trial or hearing in this matter and that pertain to this matter.

**RESPONSE:**

Request No. 2.    Any and all documents that you have received from a third party in response to a subpoena, public information act request, freedom of

information act request, or other similar request to any third-party to which the third-party is obligated by law to respond.

**RESPONSE:**

Request No. 3.    Any and all documents that you intend to rely upon, introduce into evidence, or that may support a position that you intend to take in any trial or hearing in this lawsuit.

**RESPONSE:**

Request No. 4.    Any and all documents used or relied on in the preparation of Aarow's responses to Tricore's First Set of Interrogatories.

**RESPONSE:**

Request No. 5.    Any and all contracts and agreements by and between Aarow and any of the Individual Defendants, including, but not limited to, contracts and agreements that are no longer in effect, contracts and agreements that remain in effect, any employment agreements, employee manuals to which you contend the employees to be bound, or other arrangements.

**RESPONSE:**

Request No. 6.    Any and all employee handbooks; codes of conduct; policies; and procedures manuals; or rules to which you contend the Individual Defendants were bound to while employed by Aarow or to which the Individual Defendants continue to be bound.

**RESPONSE:**

Request No. 7.    Any and all documents relating to the formation and termination, if any, of the employment relationship between Aarow and each of the Individual Defendants.

**RESPONSE:**

Request No. 8.    Any and all documents relating to the job description(s) for the position(s) that the Individual Defendants held with Aarow.

**RESPONSE:**

Request No. 9.    Any and all documents relating to the Subject Information that Aarow contends the Individual Defendants or Corporate Defendants misused or misappropriated, including, but not limited to, customer lists, company policies, pricing information and the like.

**RESPONSE:**

Request No. 10.    Any and all documents relating to or supporting your contention that Defendants took or otherwise misused the Subject Information.

**RESPONSE:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

## Certificate of Service

I HEREBY CERTIFY that on this 3rd of November, 2023, I caused the foregoing Request for Production of Documents to be served on all counsel of record via the CM/ECF electronic filing system.

*/s/ Gregory L. Arbogast*
Gregory L. Arbogast

18

sIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| AAROW ELECTRICAL SOLUTIONS, LLC, | * | |
| | * | Case No.  8:22-cv-02363-GJH |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| TRICORE SYSTEMS, LLC, *ET AL.*, | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**DEFENDANT, JONATHON STEELE'S, FIRST SET OF INTERROGATORIES
TO PLAINTIFF, AAROW ELECTRICAL SOLUTIONS, LLC**

TO:          Plaintiff, Aarow Electrical Solutions, LLC

FROM:     Defendant, Jonathon Steele

Defendant, Jonathon Steele, requests that Plaintiff, Aarow Electrical Solutions, LLC, answer the following interrogatories pursuant to Fed. R. Civ. P. 33.

**I.
INSTRUCTIONS**

A.      You are requested to answer each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your answers upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to Fed. R. Civ. P. 33(b)(2).

B.      If there is an objection, the reasons for objection must be stated in lieu of an answer.

1

C.    As provided in the Federal Rules, the answers are to be signed by the person making them, and the objections signed by the attorney making them.

D.    As provided in the Federal Rules, the party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

E.    The party answering the interrogatories must restate each question, by photocopying it or otherwise, then insert the word "Answer" and immediately thereafter state the response to that question. The answering party must attach the necessary oath and certificate of service to the answers.

F.    These Interrogatories are continuing in nature, so as to require the filing of supplemental answers without further request should additional information, or information inconsistent with the information contained in the answers to these Interrogatories, become available to the party to whom these Interrogatories are directed.

G.    Unless otherwise indicated, these interrogatories refer to the time, place, and circumstances of the occurrences, events, conditions or happenings mentioned, described, or complained of in the pleadings.

H.    If the responding party elects to specify and produce business records as an answer to any interrogatory, the specification shall be in sufficient detail to enable

the interrogating party to locate and identify the records from which the answer may be ascertained.

I.      Each interrogatory incorporates by reference the definitions contained in Article II, General Definitions and Article III, Specific Definitions.

## II.
## GENERAL DEFINITIONS

A.      The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

B.      The terms "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

C.      The term "electronically stored information" means any and all information and data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

D.      The term "ESI" refers to electronically stored information.

E.      The term "document" includes both electronically stored information and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original), including by way of example, but not limited to the following:  books, records, ledgers, accounting software data, other business

3

software data, contracts, agreements, invoices, bills, receipts, credit card receipts, certificates, canceled checks, bank account statements, emails, text messages, social media messages, other forms of electric communication, data saved or stored in computer software, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities), email messages, minutes, manuals, diaries, calendars, desk pads, scrap pads, scrap books, notebooks, notes, time sheets, correspondence, bulletins, circulars, brochures, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, drawings, blueprints, photographs, negatives, text messages, and any data, information or statistics contained within any data storage modules, tapes, discs or other memory devices, and any information retrieved from such data storage modules, tapes, discs, or other memory devices, including computer generated reports and printouts.

F.    The term "communication" means any disclosure, transfer, or exchange of information or opinion, however made.

G.    The term "confidential information" means all information in which there is a proprietary interest and that there is a legitimate business reason for guarding against unauthorized use or disclosure.

H.    The term "medium" means any physical form or manner of storing or preserving information temporarily or permanently, including, without limitation,

4

paper, photographic film, slides or prints, transparencies, drawings or pictures, electronic or magnetic memory devices (e.g., magnetic disks or tapes, bubble memories, or semiconductor devices such as DRAM, SRAM, EPROM, FLASH or PAL chips, optical laser disks (e.g., CD ROM disks)).

I.    The term "EBITDA" means earnings before interest, taxes, depreciation and amortization.

J.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Responses any information that might otherwise be construed not to be responsive to these Responses.

K.    The term "any" means one or more.

L.    The term "relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, evidencing, studying, commenting or reporting on, mentioning, summarizing analyzing, or referring, alluding, or pertaining to, in whole or in part.

M.    The term "including" means including, but not limited to.

### III.
### SPECIFIC DEFINITIONS

A.    The term "Aarow" refers to Plaintiff, Aarow Electrical Solutions, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

B.    The term "Tricore" refers to Defendant, Tricore Systems, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

5

C.      The term "NTI" refers to Defendant, National Technology Integrators, LLC, and its agents, employees, members, managers, representatives, accountants, and attorneys.

D.      The term "Reyes" refers to Defendant, Anthony Reyes, and his representatives, accountants, attorney, and agents.

E.      The term "Steele" refers to Defendant, Jonathon Steele, and his representatives, accountants, attorney, and agents.

F.      The term "Hummer" refers to Defendant, Dave Hummer, and his representatives, accountants, attorney, and agents.

G.      The term "Wilson" refers to Defendant, Michael Gregory Wilson, and his representatives, accountants, attorney, and agents.

H.      The term "Santos" refers to Defendant, Candance Santos, and her representatives, accountants, attorney, and agents.

I.      The term "Tippett" refers to Defendant, Chad Tippett, and his representatives, accountants, attorney, and agents.

J.      The term "Velozo" refers to Defendant, Nathan Velozo, and his representatives, accountants, attorney, and agents.

K.      The term "David Taylor" refers to Defendant, David Paul Taylor, and his representatives, accountants, attorney, and agents.

L.      The term "John Taylor" refers to Defendant, John Taylor, and his representatives, accountants, attorney, and agents.

6

M.    The term "Individual Defendants" refers, individually or collectively as the case may be, to Reyes, Hummer, Wilson, Santos, Steele, John Taylor, David Tayor, Tippett, and Velozo, and their representatives, accountants, attorneys, and agents.

N.    The term "Corporate Defendants" refers to NTI and Tricore.

O.    The term "Defendants" refers to the Individual Defendants and the Corporate Defendants.

P.    The term "HITT" refers to HITT Contracting Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Q.    The term "Kaiser Permanente" refers to Kaiser Foundation Health Plan, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

7

R.    The term "Amended Complaint" refers to the Amended Complaint in this action filed by Aarow against Defendants, Docket Entry No. 64.

S.    The term "Davis" refers to James G. Davis Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

T.    The term "Rand" refers to Rand Construction Corporation, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

U.    The term "Alpha Craft" refers to Alpha Craft Technologies, LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

V.    The term "City" refers to City Construction LLC, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

W.    The term "Sigal" refers to GCS, Inc., DBA GCS-SIGAL, each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents, accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

X.    The term "J.E. Richards" refers to J.E. Richards, Inc., each of its predecessors, successors, divisions, subsidiaries, and affiliates, located both in the United States and in any other country, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each joint venture to which any of them is a party, and all present and former directors, officers, employees, agents,

accountants, consultants, attorneys, or other persons acting for or on behalf of any of them.

Y.    The term "Chet Gagnon" refers to Chet Gagnon, and his representatives, accountants, attorney, and agents.

Z.    The term "Scott Gagnon" refers to Scott Gagnon, and his representatives, accountants, attorney, and agents.

AA.    The term "Klicka" refers to John Klicka, and his representatives, accountants, attorney, and agents.

BB.    The term "Procore Software" refers to any software program created by Procore Technologies, Inc.

CC.    The term "Accubid Software" refers to any software program created by Trimble Inc.

DD.    The term "MUTSA" refers to the Maryland Uniform Trade Secrets Act, enacted on July 1, 1989 and codified under Maryland Code, Sections 11–1201 through 11–1209 of the Commercial Law Article.

EE.    The term "DTSA" refers to the Defend Trade Secrets Act, enacted May 11, 2016 and codified at 18 U.S.C. 1831, *et seq*.

FF.    The term "Trade Secrets" means any information or thing that constitutes a trade secret under the MUTSA and/or the DTSA, including, without limitation, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic

10

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GG.    The term "Temporary Restraining Order" refers to the Temporary Restraining Order entered in this action, Docket Enry No. 14.

HH.    The term "Subject Information" refers to any of your confidential information, trade secret(s) or other proprietary information whether oral or in writing or stored on any form of medium which is the subject of this lawsuit.

II.    The term "Relevant Time Period" means the time period from January 1, 2019 through the present.

# IV.
# INTERROGATORIES TO BE ANSWERED

Interrogatory No. 1.    Identify the individual executing these Interrogatories on behalf of Aarow and identify the authority that such individual has to execute the Interrogatories.

**ANSWER:**

Interrogatory No. 2.    Identify each individual who provided information to assist in answering these Interrogatories and identify the information provided.

**ANSWER:**

Interrogatory No. 3.    Identify each document relied upon in answering each individual Interrogatory.

**ANSWER:**

Interrogatory No. 4.    Identify each person whom you expect to call as an expert witness at any hearing or trial of this matter and for each identified person:

11

(a) state the subject matter on which the expert is expected to testify, and

(b) provide the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

**ANSWER:**

Interrogatory No. 5.    With respect to an expert whose findings and opinions were acquired in anticipation of litigation or for trial:

    a.  summarize the qualifications of the expert,

    b.  state the terms of the expert's compensation, and

    c.  attach to your answer any available list of publications written by the expert and any written report made by the expert concerning the expert's findings and opinions.

**ANSWER:**

Interrogatory No. 6.    If you intend to rely upon any documents, electronically stored information, or tangible things to support a position that you have taken or intend to take in this action, provide a brief description, by category and location, of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them.

**ANSWER:**

Interrogatory No. 7.    Identify each person having discoverable information and, for each person, summarize the discoverable information that such person possesses.

**ANSWER:**

Interrogatory No. 8.        Identify each and every document that you contend any Individual Defendant deleted or destroyed and for each such document, identify:

(a) the electronic device on which the document was deleted or destroyed;

(b) the individual who deleted or destroyed the document;

(c) the date on which such document was deleted or destroyed;

(d) the import or economic value of such document; and

(e) whether and where any duplicate or recovery copies of such document are located or saved.

**ANSWER:**

Respectfully submitted,

*/s/ Gregory L. Arbogast*

Gregory L. Arbogast
Bar No. 29590
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5112
Garbogast@gebsmith.com

*Counsel for the Defendants*

13

## **Certificate of Service**

I HEREBY CERTIFY that on this 3rd day of November, 2023, I caused the foregoing Interrogatories to be served on all counsel of record via the CM/ECF electronic filing system.


/s/ Gregory L. Arbogast
Gregory L. Arbogast

14